Kosterich & Skeete, LLC.
Counsel for Secured Creditor
707 Westchester Ave, Suite 302
White Plains, NY 10604
(914) 395 0055
By: Denise Singh Skeete, Esq
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

In re:                                                              CASE NO. 20-31009-5-wak


        Samantha E. Sawyer,                                  Chapter 13



                        Debtor.
-----------------------------------------------------X


**<u>NOTICE OF MOTION FOR AN ORDER TERMINATING THE AUTOMATIC STAY</u>**

        **PLEASE TAKE NOTICE** that on **June 1, 2023,** Carrington Mortgage Services, LLC., as

servicer for J.P. Morgan Mortgage Acquisition Corp., by the undersigned attorneys, will move this

Court, before the Honorable Judge Wendy A. Kinsella, United States Bankruptcy Judge, in the

United States Bankruptcy Court for the Northern District of New York, located at 100 South

Clinton Street, 2nd Floor, Syracuse, New York at **10:00a.m.,** or as soon thereafter as counsel may

be heard, pursuant to Section 362(d) of title 11 of the United States Code ("Bankruptcy Code") for

the entry of the annexed order: (i) vacating the automatic stay imposed by § 362(a) of the

Bankruptcy Code as to the movant's interest in the real property commonly known as as 18799

County Route 162, Watertown, New York 13601 pursuant to 11 U.S.C. § 362(d)(1) based on

Creditor's lack of adequate protection in the Subject Premises, and waiving the 14-day stay pursuant

to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");  (ii) granting

the movant such other and further relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that if you intend to oppose this motion,

written opposition must be filed with the clerk of the court and served on movant's counsel at

least seven (7) days prior to the return date. If you do not file and serve written opposition, no

hearing will be held on the return date and the court may grant the motion as unopposed.

Dated:  White Plains, New York
        April 27, 2023

Kosterich & Skeete, LLC.
Attorneys for Creditor

/s/ Denise Singh Skeete

By Denise Singh Skeete, Esq.
707 Westchester Ave, Suite 302
White Plains, NY 10604
(914) 395 0055

Kosterich & Skeete, LLC.
Counsel for Secured Creditor
707 Westchester Ave, Suite 302
White Plains, NY 10604
(914) 395 0055
By: Denise Singh Skeete, Esq
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                          CASE NO. 20-31009-5-wak


      Samantha E. Sawyer,                                   Chapter 13


                Debtor.
-------------------------------------------------------------X


STATE OF NEW YORK       )
                          )ss.:
COUNTY OF WESTCHESTER   )

## AFFIRMATION IN SUPPORT OF MOTION TO LIFT STAY

      Denise Singh Skeete, an attorney at law duly admitted to practice before the United

States District Court for the Northern District of New York affirms the truth of the following:

      1.      I am an attorney with Kosterich & Skeete, LLC., counsel for Carrington Mortgage

Services, LLC as servicer for J.P. Morgan Mortgage Acquisition Corp., ("Creditor"), the creditor

herein and I am fully familiar with the facts of this case. Creditor requests an order:  (1) vacating

the automatic stay imposed by 11 U.S.C. § 362(a) of the Bankruptcy Code thus allowing Creditor to

pursue its interest in the real property commonly known as 18799 County Route 162, Watertown,

New York 13601 (the "Subject Premises") pursuant to  11 U.S.C. § 362(d)(1) based on Creditor's

lack of adequate protection in the Subject Premises, and waiving the 14-day stay pursuant to Rule

4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");  (2) and granting

such other and further relief as the Court deems just and proper.

**<u>Jurisdiction and Statutory Bases for Relief</u>**

2.      This Court has jurisdiction over this matter under 28 U.S.C §§ 157 and 1334. The statutory predicates for the relief sought herein are 11 U.S.C §§ 362(d)(1) and 11 U.S.C §§ 101 et seq. and Rule 4001 of the Bankruptcy Rules. This matter is a core proceeding under 28 U.S.C §§ 157 (b)(2)(A).

**<u>Factual and Procedural Background</u>**

3.      On or about July 17, 2013, borrower Samantha Cheek a/k/a Samantha E. Sawyer ("Borrower"), for the purpose of evidencing an indebtedness of $98,571.00, executed, and delivered to Residential Home Funding Corp., a New York Corporation, a certain Note. A copy of said Note and pertinent Allonges are attached hereto as part of **Exhibit A.**

4.      As collateral security for the payment of the aforementioned indebtedness, the Borrower, duly executed, acknowledged and delivered to MERS as nominee for Residential Home Funding Corp, a Mortgage of the Subject Premises. The Mortgage was duly recorded in the Jefferson County Clerk's Office and was assigned with the current assignment being made to the Creditor herein. A copy of said Mortgage and Assignment is annexed as part of **Exhibit A.**

5.      On September 24, 2020, Debtor filed for Chapter 13 Bankruptcy protection.

6.      On April 20, 2022, Debtor entered into a loan modification with Creditor. A copy of said Loan Modification is annexed as part of **Exhibit A**

**<u>Creditor is entitled to relief from stay pursuant to 11 USC § 362(d)(1)</u>**

7.      Based upon the Certification of Payment History in support of this application submitted by Rosa Chapa of Carrington Mortgage Services, LLC., servicer for Creditor and attached **as Exhibit B**, Borrower defaulted under the Note, Mortgage, and subsequent Loan Modification.

8.      Creditor is entitled to relief from the automatic stay based upon the lack of

adequate protection pursuant to 11 U.S.C. § 362(d)(1), which states in part:

> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant
> relief from the stay provided under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay—
> **(1)** for cause, including the lack of adequate protection of an interest in property of such
> party in interest;

9.      Courts may find that there is adequate protection for a secured creditor where

there is equity in the property, but the equity cushion must be significant. See In re Rorie, 98

B.R. 215, 221 (Bankr. E.D. Pa. 1989) (stating that in determining whether the equity cushion

provides adequate protection, the court considers factors such as "the size of the cushion; the rate

at which the cushion will be eroded; and whether periodic payments are to be made to prevent or

mitigate the erosion of the cushion" and holding that an equity cushion valued at 42% of the

claim is sufficient to provide adequate protection).

10.     As stated on the Broker Price Opinion, the current value of the Subject Premises

is $155,000.00.

11.     Per the Certification of Payment History, Creditor is owed $98,783.79 plus any

additional interest and other expenses.

12.     Borrower's continued non-payment, including non-payment of all post-petition

payments, is evidence that Creditor is not being adequately protected with respect to the subject

premises and is thus entitled to relief from the stay pursuant 11 U.S.C. § 362(d)(1).

13.     It is clear that Creditor is not being adequately protected with respect to the

Subject Premises and is thus entitled to relief from the stay pursuant 11 U.S.C. § 362(d)(1).

14.     Federal Rule 4001(a)(3) provides that "any order granting relief from an

automatic stay …is stayed until the expiration of 14 days after the entry of the order unless the

court orders otherwise." In light of the aforementioned, Creditor respectfully requests that the

stay provision of Federal Rule 4001(a)(3) be waived.

## **CONCLUSION**

15.     For the foregoing reasons, it is respectfully submitted that the present motion be

granted in its entirety.

16.     No prior application for relief requested herein has been made in the present case.

17.     Creditor respectfully requests that the requirement of a memorandum of law be

waived because the principles governing the relief requested herein are well-established and the

applicable law has been summarily briefed in the body of this affirmation.

WHEREFORE, Creditor prays for an order vacating the automatic stay imposed by 11

U.S.C. § 362(a) of the Bankruptcy Code and waiving the 14-day stay pursuant to Rule 4001 of the

Federal Rules of Bankruptcy Procedure and for such other and further relief as this Court may

deem just and proper.

Dated:  White Plains, New York
        April 27, 2023

Kosterich & Skeete, LLC.
Attorneys for Creditor
/s/ Denise Singh Skeete

_____

By Denise Singh Skeete, Esq.
707 Westchester Ave, Suite 302
White Plains, NY 10604
(914) 395 0055

# EXHIBIT A

ORIGINAL

LOAN #: ▮▮▮▮
MIN: ▮▮▮▮

CHEE

# NOTE

July 17, 2013
[Date]

Briarcliff Manor,
[City]

New York
[State]

18799 County Route 162, Watertown, NY 13601
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $98,571.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  Residential Home Funding Corp., a New York Corporation.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  4.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1ST    day of each month beginning on  September 1, 2013. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  August 1, 2043,    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  P.O. Box 5303
Parsippany, NJ 07054

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.  $484.91.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Initials: _SEC_



**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Samma E. Ch_ 7/17/2013 (Seal)

SAMANTHA CHEEK      DATE

Pay to the order of:
Without Recourse
JPMorgan Chase Bank, N.A.
By: _____
Temika Ethridge/Asst Secretary

**[Sign Original Only]**

## ALLONGE TO THE PROMISSORY NOTE

**For purposes of further endorsement of the following described Note, this Allonge is affixed and becomes a permanent part of said Note:**

| | |
|---|---|
| Note Date: | July 17, 2013 |
| Loan Amount: | $98,571.00 |
| Property Address: | 18799 County Route 162, Watertown, NY 13601 |
| Borrower (s): | Samantha Cheek |

PAY TO THE ORDER OF:

JP MORGAN CHASE BANK, N.A.

WITHOUT RECOURSE

RESIDENTIAL HOME FUNDING CORP., A NEW YORK CORPORATION

By: _____

NOREEN A. LIGGERO
**SENIOR VICE PRESIDENT**

Cheryl D Lane, Clerk
175 Arsenal Street
Watertown, NY 13601
(315) 785-3081

*Chase*

# Jefferson County

## Jefferson County Clerk Recording Cover Sheet

**Received From :**
BROWNELL ABSTRACT CORPORATION
ATTN: MICHAEL YONKOVIG
135 PARK PLACE
WATERTOWN, NY 13601

**Return To :**
BROWN, DIERDORF & RENZI
OFFICE MAILBOX
165 MULLIN STREET
WATERTOWN, NY 13601

**First SIDE 1 NAME**
CHEEK, SAMANTHA E

**First SIDE 2 NAME**
MERS -AS NOME

**Index Type : Land Records**

### File Number : 2013-00010612

**Type of Transaction : Mortgage - Type C**
**Recording Fee :**   $102.50

**Recording Pages :**   12

The Property affected by this instrument is situated in Rutland, in the County of Jefferson, New York

#### Mortgage Taxes

| | |
|---|---|
| **Property Located :** | Rutland |
| **Serial Number :** | DE1362 |
| **Mortgage Amount :** | $98,571.00 |
| **Basic Tax :** | $493.00 |
| **Local Tax :** | $0.00 |
| **Additional Tax :** | $0.00 |
| **Transportation Auth Tax :** | $0.00 |
| **SONYMA :** | $246.50 |
| **County Tax :** | $0.00 |
| **Total :** | $739.50 |

**Total Fees :**   $842.00

State of New York

County of Jefferson

I hereby certify that the within and foregoing was recorded in the Clerk's office for Jefferson County, New York

On (Recorded Date) : 07/19/2013

At (Recorded Time) : 2:01:32 PM

Doc ID - 006853540012

Cheryl D. Lane

Cheryl D Lane, Clerk



This sheet constitutes the Clerk's endorsement required by section 319 of Real Property Law of the State of New York and conforms to Jefferson County local Law. THIS PAGE IS PART OF YOUR DOCUMENT AND IS NOT A BILL, ALL FEES HAVE BEEN PAID.

Entered By: JNAVARRA  Printed On : 07/19/2013    At : 2:07:31PM

When recorded, return to:
Residential Home Funding Corp.
Attn: Final Document Department
100 Lanidex Plaza, 2nd Floor
Parsippany, NJ 07054
973-577-7008

LOAN #: ▓▓▓▓▓▓▓▓▓

—————————————[Space Above This Line For Recording Data]—————————————

## MORTGAGE

MIN ▓▓▓▓▓▓▓▓▓▓▓▓

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) **"Security Instrument."** This document, which is dated  July 17, 2013,                    together with all Riders
to this document, will be called the "Security Instrument."
(B) **"Borrower."**  SAMANTHA CHEEK,

whose address is   18799 County Route 162
Watertown, NY 13601,

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware,
and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street,
Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS. FOR **PURPOSES OF RECORDING
THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) **"Lender."**   Residential Home Funding Corp.,

will be called "Lender."
Lender is a corporation or association which exists under the laws of   New York.
Lender's address is   100 Lanidex Plaza, 2nd Floor, Parsippany, NJ 07054

(E) **"Note."** The note signed by Borrower and dated July 17, 2013,                    will be called the "Note." The
Note shows that I owe Lender  NINETY EIGHT THOUSAND FIVE HUNDRED SEVENTY ONE AND NO/100* * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. $98,571.00        )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay
the debt in full by  August 1, 2043.
(F) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the
"Property."
(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the
Property" sometimes will be called the "Sums Secured."
(I)  **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The
following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider                ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider
☐ V.A. Rider

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and adminis-
trative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will
be called "Applicable Law."

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01          Initials: _____
Ellie Mae, Inc.                          Page 1 of 10                              NYEDEED  1212
                                                                                   NYEDEED
                                                                                   07/17/2013 08:09 AM PST

LOAN #: ▓▓▓▓▓▓

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."
(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."
(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance Proceeds as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."
(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."
(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;
(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at  18799 County Route 162, Watertown,

[Street] [City, Town or Village]

New York 13601.
[Zip Code]
This Property is in  Jefferson                                  County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
APN #: 92.10-1-16

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) though (F) of this section.

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01                    Initials: _JEC_
Ellie Mae, Inc.                                  Page 2 of 10                                  NYEDEED  1212
NYEDEED
07/17/2013 08:09 AM PST



LOAN #: ▉▉▉▉▉▉

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNER-SHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) **Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all

Initials: _JE C_



LOAN #: ▮▮▮▮▮▮▮

Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage.

Initials: _J E C_

NYEDEED  1212
NYEDEED
07/17/2013 08:09 AM PST



LOAN #: ▮▮▮▮▮▮▮

Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy the Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01

Ellie Mae, Inc.                                                       Page 5 of 10

Initials: _JEC_

NYEDEED  1212
NYEDEED
07/17/2013 08:09 AM PST



LOAN #: ▌▌▌▌▌

the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

Initials: _JEC_

NYEDEED  1212
NYEDEED
07/17/2013 08:09 AM PST

LOAN #:

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations. Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights. Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my

Initials: _JEC_

NYEDEED 1212
NYEDEED
07/17/2013 08:09 AM PST



LOAN #:

change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys'

fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join, or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental

Initials: _AEC_

NYEDEED  1212
NYEDEED
07/17/2013 06:09 AM PST



LOAN #: [redacted]

Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met: (a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument.

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:
(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;
(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and
(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01
Ellie Mae, Inc.                                                      Page 9 of 10

Initials: _ℐℰℭ_
NYEDEED  1212
NYEDEED
07/17/2013 08:09 AM PST



LOAN #:

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any Rider signed by me and recorded with it.

_____          7/17/2013 (Seal)
SAMANTHA CHEEK                                      DATE

State of NEW YORK                   )
                                    )  SS:
County of JEFFERSON                 )

On the 17TH day of JULY in the year 2013, before me, the undersigned, a Notary Public in and for said State, personally appeared SAMANTHA CHEEK, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

My commission expires: _____

DAVID A. RENZI
Notary Public, State of New York
Registration No. 02RE6074110
Qualified in Jefferson County
Commission Expires 5/6/20__



SCHEDULE "A"

**All that tract or parcel of land** situate in the Town of Rutland, County of Jefferson and State of New York, being part of a 104.18 acre parcel of land conveyed to George F. and Evelyn M. Staplin, being further described as follows:

**Beginning** at the intersection of four corners of roads, at a point in the center of Middle Road near the church running in a westerly direction along the center of said Middle Road 280 feet to a point;

**Thence** running in a northerly direction 172 feet to a point;

**Thence** running easterly and parallel to the first course described a distance of 280 feet to a point;

**Thence** running southerly along the center of North Community Drive a distance of 172 feet to the point of beginning.

**Intending** to describe a rectangular piece of land located on the corner of Middle Road and North Community Drive.

**Assignment of Mortgage without Covenant – Individual or Corporation**
CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT
SHOULD BE USED BY LAWYERS ONLY.

---

## ASSIGNMENT OF MORTGAGE

**KNOW THAT**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, AS NOMINEE FOR RESIDENTIAL HOME FUNDING CORP., its successors and assigns,** assignor, for valuable consideration paid, hereby assigns without recourse unto the assignee, **JP MORGAN CHASE BANK, N.A., its successors and assigns,** the

Mortgage dated JULY 17, 2013, made by SAMANTHA CHEEK, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, AS NOMINEE FOR RESIDENTIAL HOME FUNDING CORP., its successors and assigns for the principal sum of $98,571.00, and recorded on JULY 19, 2013, at FILE NO.: 2013-00010612, at the JEFFERSON COUNTY CLERK'S OFFICE, which covers the premises known as: 18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601.

TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the assignor has duly executed this assignment the _3rd_ day of _November_ in the year 2020.

IN PRESENCE OF:

**CARRINGTON MORTGAGE SERVICES, LLC, as Servicer and Attorney-in-Fact for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, AS NOMINEE FOR RESIDENTIAL HOME FUNDING CORP.,**

BY: _____

NAME: _____Karin Murphy_____

TITLE: _____

**This assignment is not subject to requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.**

STATE OF __Texas__          ;   COUNTY OF: __COLLIN__

On the _3_ day of __November__          , in the year _2020_, before me, the undersigned, personally appeared: __Karin Murphy__

_____personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City/Town of __Plano__ .

_____
NOTARY PUBLIC

TORI DANNER
Notary Public, State of Texas
Comm. Expires 03-11-2024
Notary ID 130578720

**Assignment of Mortgage without Covenant – Individual or Corporation**

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT
SHOULD BE USED BY LAWYERS ONLY.

_____

### ASSIGNMENT OF MORTGAGE

**KNOW THAT**

**JP MORGAN CHASE BANK, N.A., its successors and assigns,** assignor, For valuable consideration
paid, hereby assigns without recourse unto the assignee, **J.P. MORGAN MORTGAGE
ACQUISITION CORP., its successors and assigns,** the

Mortgage dated JULY 17, 2013, made by SAMANTHA CHEEK, to MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC, AS NOMINEE FOR RESIDENTIAL HOME FUNDING CORP., its
successors and assigns for the principal sum of $98,571.00, and recorded on JULY 19, 2013, at FILE NO.:
2013-00010612, at the JEFFERSON COUNTY CLERK'S OFFICE, which covers the premises known as:
18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601.

Which Mortgage was assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NOMINEE FOR RESIDENTIAL HOME FUNDING CORP., its successors and assigns, to JP
MORGAN CHASE BANK, N.A., by assignment dated _____, which assignment was recorded
on _____, in _____, at the JEFFERSON COUNTY CLERK'S OFFICE.

TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the assignor has duly executed this assignment the 3rd day of November in the year 2020.

IN PRESENCE OF:

**CARRINGTON MORTGAGE SERVICES, LLC, as Servicer and Attorney-in-Fact for J.P. MORGAN MORTGAGE ACQUISITION CORP.**

BY: _____

NAME: _____ Karin Murphy _____

TITLE: _____ Bankruptcy Director _____

**This assignment is not subject to requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.**

STATE OF Texas ; COUNTY OF: COLLIN

On the 3 day of November, in the year 2020, before me, the undersigned, personally appeared: Karin Murphy
_____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City/Town of Plano.

_____
NOTARY PUBLIC

TORI DANNER
Notary Public, State of Texas
Comm. Expires 03-11-2024
Notary ID 130578720

## LIMITED POWER OF ATTORNEY

JPMorgan Chase Bank, N.A. (hereinafter called "Seller") hereby appoints Carrington Mortgage Services, LLC, a Delaware limited liability company with its principal place of business at 1600 South Douglass Road, Suite 100 and 200B, Anaheim, California 92806 (the "Purchaser") (hereinafter called "Purchaser"), as its true and lawful attorney-in-fact to act in the name, place and stead of Seller for the purposes set forth below. This Limited Power of Attorney is given pursuant to a certain Servicing Rights Purchase and Sale Agreement by and between Seller and Carrington Mortgage Services, LLC dated as of October, 2, 2015 (the "Agreement") to which reference is made for the definition of all capitalized but undefined terms herein.

Now therefore, Seller does hereby constitute and appoint Purchaser as the true and lawful attorney-in-fact of Seller and in Seller's name, place and stead with respect to each Mortgage Loan as defined in the Agreement, in which JPMorgan Chase Bank, N.A. is the current lienholder of record, for the following, and for the following, purposes:

1. To execute, acknowledge, seal and deliver satisfactions/releases/reconveyances of deed of trust/mortgage, tax authority notifications and declaration, deeds of conveyance (including, but not limited to REO deeds to end purchasers), and transfer documents, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, and/or recordation or filing. To execute, assign, and deliver all documentation required to foreclose delinquent Mortgage Loans or otherwise enforce the rights under such Mortgages and the related Mortgage Note in Purchaser or its designee's own name, and to correct or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by the Seller. **The foregoing should not be construed as a grant of authority from Seller to Purchaser to foreclose delinquent Mortgage Loans or otherwise enforce rights under such Mortgages and the related Mortgage Note in Seller's name.**

2. To endorse and/or assign checks or negotiable instruments received by Purchaser as a Mortgage Loan payment or in the form of insurance proceeds.

Seller further grants to Purchaser full authority to act in any manner both proper and necessary to exercise the foregoing powers, and ratifies every act that Purchaser may lawfully perform in exercising those powers by virtue hereof.

This Limited Power of Attorney shall expire on or before the date that is six (6) months from the transfer date. Notwithstanding the foregoing, this Limited Power of Attorney shall expire, with respect to each individual Mortgage Loan, on such earlier date that Purchaser, or its designee (provided that such designee is an affiliate of Purchaser) becomes mortgagee of record of such Mortgage Loan.

Purchaser shall indemnify, defend and hold harmless Seller and its successors and assigns from and against any and all Losses (as defined in the Agreement) arising out of, related to, or in connection with (i) any act taken by Purchaser pursuant to this Limited Power of Attorney,

which act results in a claim solely by virtue of the unlawful use of this Limited Power of Attorney (and not as a result of a claim related to the underlying instrument with respect to which this Limited Power of Attorney has been used), or (ii) any use or misuse of this Limited Power of Attorney in any manner or by any person not expressly authorized hereby.

For the avoidance of doubt, this Limited Power of Attorney is intended to cover purposes specified herein, taken in the name of: JPMorgan Chase Bank, NA successor in interest by purchase from the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank; JPMorgan Chase Bank, NA successor in interest by purchase from the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank f/k/a Washington Mutual Bank, F.A.; JPMorgan Chase Bank, NA successor in interest by purchase from the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank f/k/a Washington Mutual Bank, F.A. successor to North American Mortgage Company; JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC; or JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation.

IN WITNESS WHEREOF, Seller has executed this Limited Power of Attorney this 1st day of October, 2015.

JPMORGAN CHASE BANK, N.A

By: _Barbara A. Campbell_

Name:  Barbara A. Campbell

Title:   Executive Director

**STATE OF OHIO )**

SS.:

COUNTY OF FRANKLIN )

The foregoing instrument was acknowledged before me this 1st day of October, 2015, by Barbara A. Campbell, Executive Director of JPMorgan Chase Bank, N.A. She is personally known to me.

(SEAL)

Notary Public: _____

STARLENE L. STARLING
Notary Public, State of Ohio
My Comm. Expires 12-10-2018

Notary Commission Expires: _12-10-2018_

Personally known: XXX_

Produced Identification _____

Type of Identification Produced_____

FHA/VA/RHS Case No.: ███████████

# PROMISSORY NOTE

**APRIL 20, 2022**          **WATERTOWN**          **NEW YORK**
[Date]                               [City]                          [State]

**18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601**
[Property Address]

## 1. PARTIES.

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means the **United States of America, acting through the Rural Housing Service and its successors.**

## 2. BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of **NINE THOUSAND NINE HUNDRED TWENTY-NINE DOLLARS AND 21 CENTS** Dollars (U.S. **$9,929.21**), to the order of Lender.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time.**
On; **MAY 1, 2062** or, if earlier, when the first of the following events occurs:
   (i) The Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Lender, or
   (ii) The maturity date of the primary Note has been accelerated, or
   (iii) The Primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Lender.
**(B) Place.**

Payment shall be made at the **USDA, Rural Development Guaranteed Loan, 4300 Goodfellow Blvd. Building 105 E Mail Code FC-225, St. Louis, MO 63120-0011, Attn: Guaranteed Loss Mitigation Section, Toll-Free: (866) 550-5887**or any such other place as Lender may designate in writing by notice to Borrower.

04122022_532

**5.  BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.  WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights or presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**7.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____

Borrower

**SAMANTHA CHEEK**

This Document Prepared By:
**BRANDY MANGALINDAN**
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA 92806**
**1-866-874-5860**

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**C/O LOSS MITIGATION POST CLOSING**
**DEPARTMENT**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA 92806**

Tax/Parcel #: **225489-092-010-0001-016-000**

[Space Above This Line for Recording Data]

~~FHA/VA/RHS Case No.:~~ ▮

Loan No: ▮

**18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601**
(herein "Property Address")

# MORTGAGE RECOVERY ADVANCE

**This property is or will be improved by a one or two family dwelling only.**

THIS MORTGAGE RECOVERY ADVANCE ("Security Instrument") is given on **APRIL 20, 2022.** The mortgagor is **SAMANTHA CHEEK** ("Borrower"), whose address is **18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601.** This Security Instrument is given to the **United States of America, acting through the Rural Housing Service and its successors,** whose address is **4300 Goodfellow Blvd., FC225, St. Louis**

MO 63120 ("Lender"). Borrower owes Lender the principal sum of **NINE THOUSAND NINE HUNDRED TWENTY-NINE DOLLARS AND 21 CENTS** Dollars (U.S. **$9,929.21**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **MAY 1, 2062.**

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in the County of **JEFFERSON**, State of **NEW YORK:**

which has the address of , **18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601** (herein "Property Address");

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Tax Parcel No. 225489-092-010-0001-016-000

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any

forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

4. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: USDA/RD/CSC, 4300 Goodfellow Blvd., FC225, St. Louis, MO 63120 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

6. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7. **Lender's Rights. If Borrower Fails to Keep Promises and Agreements.** If all of the conditions stated in subsections (a), (b) and (c) of this Section 7 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs

and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 7 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Note when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 4 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

If the Lender's interest in this Security Instrument is held by the Lender and the Lender requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Lender may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Lender of any rights otherwise available to Lender under this paragraph or Applicable Law.

**8. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

9. **Borrower's Statement Regarding the Property.** This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

_Samantha Cheek_                                                          _May 10, 2022_
Borrower: **SAMANTHA CHEEK**                                              **Date**

_____[Space Below This Line for Acknowledgments]_____

**BORROWER ACKNOWLEDGMENT**

State of **NEW YORK**
County of _Jefferson_

On the ___ day of _____ in the year _2022_ before me, the undersigned, a Notary Public in and for said State, personally appeared **SAMANTHA CHEEK**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Elizabeth Berghorn_
Notary Public

Print Name: _Elizabeth Berghorn_

My Commission expires:

**ELIZABETH BERGHORN**
**Notary Public, State of New York**
**No. 01BE4703328**
**Qualified in Jefferson County**
**Commission Expires Jan 31 20___**

## EXHIBIT A

BORROWER(S): SAMANTHA CHEEK

LOAN NUMBER: 4000278035

LEGAL DESCRIPTION:

The land referred to in this document is situated in the CITY OF WATERTOWN, COUNTY OF JEFFERSON, STATE OF NEW YORK, and described as follows:

BEING PART OF A 104.18 ACRE PARCEL OF LAND CONVEYED TO GEORGE F. AND EVELYN M. STAPLIN, BEING FURTHER DESCRIBED AS FOLLOWS:BEGINNING AT THE INTERSECTION OF FOUR CORNERS OF ROADS, AT A POINT IN THE CENTER OF MIDDLE ROAD NEAR THE CHURCH RUNNING IN A WESTERLY DIRECTION ALONG THE CENTER OF SAID MIDDLE ROAD 280 FEET TO A POINT; THENCE RUNNING IN A NORTHERLY DIRECTION 172 FEET TO A POINT;THENCE RUNNING EASTERLY AND PARALLEL TO THE FIRST COURSE DESCRIBED A DISTANCE OF 280 FEET TO A POINT;THENCE RUNNING SOUTHERLY ALONG THE CENTER OF NORTH COMMUNITY DRIVE A DISTANCE OF 172 FEET TO THE POINT OF BEGINNING.INTENDING TO DESCRIBE A RECTANGULAR PIECE OF LAND LOCATED ON THE CORNER OF THE MIDDLE ROAD AND NORTH COMMUNITY DRIVE..

Tax/Parcel No. 225489-092-010-0001-016-000

ALSO KNOWN AS: 18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601

Date: APRIL 20, 2022
Loan Number: 4000278035
Lender: United States of America, through the Rural Housing Service and its successors

Borrower: SAMANTHA CHEEK

Property Address: 18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_Samantha Cheek_                                                           _May 16 2022_
Borrower                                                                              Date
**SAMANTHA CHEEK**

Date: APRIL 20, 2022
Loan Number: 4000278035
Lender: United States of America, through the Rural Housing Service and its successors

Borrower: SAMANTHA CHEEK

Property Address: 18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of United States of America, through the Rural Housing Service and its successors

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, United States Department of Agriculture or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_Samantha Cheek_                                                          _Mary Roccae_

SAMANTHA CHEEK                                                               Date

## MORTGAGE TAX AFFIDAVIT OF EXEMPTION
## LENDER IS A FEDERAL GOVERNMENT AGENCY
### (Pursuant to Tax Law Section 252)

State of _____ }
                             }
County of _____ }

_____, being duly sworn, deposes and says;

1. That I am the _____of,_____ as agent for the UNITED STATES OF AMERICA, ACTING THROUGH THE RURAL HOUSING SERVICE, the owner and holder of the mortgage being submitted for recording. I am familiar with the facts set forth herein.

2. That a certain mortgage made by SAMANTHA CHEEK ("Borrower") to secure the payment of the sum of Dollars ($9,929.21) affecting real property located in the County of JEFFERSON, State of New York, is herewith submitted for the purpose of having same recorded by the Clerk of the County of JEFFERSON.

3. That the money due and owing pursuant to the terms of said mortgage is due and owing to the United State of America, acting through the Rural Housing Service and its successors, an organization exempt from federal income taxation pursuant to 501(a) of the Internal Revenue Code.

4. Deponent therefore on behalf of the United State of America, acting through the Rural Housing Service and its successors claims full exemption from the mortgage tax imposed by the Tax Law and the payment of the mortgage tax pursuant to Sec. 252 of the Tax Law of the State of New York.

Name: _____
Title _____

Sworn to before me this _____ day of _____, .20_____.

_____
Notary Public, State of
My commission expires:



This Document Prepared By:
BRANDY MANGALINDAN
CARRINGTON MORTGAGE SERVICES, LLC
CARRINGTON DOCUMENT SERVICES
1600 SOUTH DOUGLASS ROAD, SUITE 200A
ANAHEIM, CA 92806
1-866-874-5860

When Recorded Mail To:
CARRINGTON MORTGAGE SERVICES, LLC
C/O LOSS MITIGATION POST CLOSING
DEPARTMENT
1600 SOUTH DOUGLASS ROAD, SUITE 200A
ANAHEIM, CA 92806

Tax/Parcel #: 225489-092-010-0001-016-000

[Space Above This Line for Recording Data]

| | |
|---|---|
| Original Principal Amount: $98,571.00 | FHA/VA/RHS Case |
| Unpaid Principal Amount: $83,220.85 | No.: ▮▮▮▮▮▮▮▮ |
| New Principal Amount: $83,220.85 | Loan No: ▮▮▮▮▮▮▮▮▮ |
| Capitalization Amount: $0.00 | |

Property Address: **18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601**

# LOAN MODIFICATION AGREEMENT

**This property is or will be improved by a one or two family dwelling only.**



Page 1

This Loan Modification Agreement ("Agreement"), made this        20TH day of
**APRIL, 2022**, between **SAMANTHA CHEEK** ("Borrower"), whose address is **18799
COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601** and **CARRINGTON
MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF J.P.
MORGAN MORTGAGE ACQUISITION CORP.**

("Lender"), whose address is **1600 SOUTH DOUGLASS ROAD, SUITE 200A,
ANAHEIM, CA 92806**, amends and supplements (1) the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument"), dated **JULY 17, 2013** and recorded on **JULY 19,
2013** in **INSTRUMENT NO./CRFN 2013-00010612**, of the **OFFICIAL** Records of
**JEFFERSON COUNTY, NEW YORK**, and (2) the Note bearing the same date as, and
secured by, the Security Instrument, which covers the real and personal property described
in the Security Instrument and defined therein as the "Property", located at

**18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601**
(Property Address)

the real property described is located in **JEFFERSON County, NEW YORK** and being set
forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**SEE ATTACHED EXHIBIT "B" FOR MORTGAGE SCHEDULE**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree
as follows (notwithstanding anything to the contrary contained in the Note or Security
Instrument):

1. As of, **MAY 1, 2022** the amount payable under the Note and the Security Instrument (the
"Unpaid Principal Balance") is U.S. **$83,220.85**, consisting of the amount(s) loaned to
Borrower by Lender, plus capitalized interest and other amounts capitalized, which is
limited to escrows, and any legal fees and related foreclosure costs that may have been
accrued for work completed, in the amount of U.S. $0.00.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of
Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of
**5.0000%**, from **MAY 1, 2022**. The Borrower promises to make monthly payments of
principal and interest of U.S. **$401.29**, beginning on the **1ST** day of **JUNE, 2022**, and
continuing thereafter on the same day of each succeeding month until principal and
interest are paid in full. If on **MAY 1, 2062** (the "Maturity Date"), the Borrower still owes
amounts under the Note and the Security Instrument, as amended by this Agreement,
Borrower will pay these amounts in full on the Maturity Date.



3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
    (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.



In Witness Whereof, I have executed this Agreement.

_Samantha Cheek_ _____      _May 16 2022_

**Borrower: SAMANTHA CHEEK**                                    **Date**

_____      [Space Below This Line for Acknowledgments]_____

## BORROWER ACKNOWLEDGMENT

State of NEW YORK
County of _Jefferson_

On the _16_ day of _May_ in the year _2022_ before me, the undersigned, a Notary Public in and for said State, personally appeared **SAMANTHA CHEEK**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument,

WITNESS my hand and official seal.

_Elizabeth Berghorn_ _____
Notary Public

Print Name: _Elizabeth Berghorn_

My Commission expires:

ELIZABETH BERGHORN
Notary Public, State of New York
No. 01BE4703328
Qualified in Jefferson County
Commission Expires Jan. 31, 20____

In Witness Whereof, the Lender has executed this Agreement.

**CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND
AUTHORIZED AGENT OF J.P. MORGAN MORTGAGE ACQUISITION CORP.**

_____          MAY 2 0 2022

By                                  (print name)                              Date

Terrence Morley, Director, Loss Mitigation      (title)
Carrington Mortgage Services, LLC Attorney In Fact

_____ [Space Below This Line for Acknowledgments] _____

State of _____
                                              SS:

County of _____

On the _____ day of _____ in the year _____ before me, the

undersigned,    personally    appeared    _____,    the

_____, personally known to me or proved to me on the

basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the

within instrument and acknowledged to me that he/she/they executed the same in

his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the

individual(s), or the person upon behalf of which the individual(s) acted, executed the

instrument.

                                                            SEE ATTACHED

Notary Public

Printed Name: _____

My commission expires: _____

Page 5

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other office completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of  California                    }

County of   Orange                    }

On    05/20/2022  before me,                    AARON VARGAS                    NOTARY PUBLIC,

(Here insert name and title of the officer)

personally appeared            TERRENCE MORLEY                    ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**AARON VARGAS**
COMMISSION # 2381019
Notary Public - California
COUNTY Of ORANGE
My Comm. Exp. OCTOBER 31, 2025

Notary Public Signature  AARON VARGAS                (Notary Public Seal)

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____  Document Date _____

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual(s)
- ☐ Corporate Officer
  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other

### INSTRUCTIONS FOR COMPLETING THIS FORM

_This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law._

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is/are) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

OrderID-454175

2015 Version

## EXHIBIT A

**BORROWER(S): SAMANTHA CHEEK**

**LOAN NUMBER: 4000278035**

**LEGAL DESCRIPTION:**

The land referred to in this document is situated in the **CITY OF WATERTOWN, COUNTY OF JEFFERSON, STATE OF NEW YORK,** and described as follows:

BEING PART OF A 104.18 ACRE PARCEL OF LAND CONVEYED TO GEORGE F. AND EVELYN M. STAPLIN, BEING FURTHER DESCRIBED AS FOLLOWS:BEGINNING AT THE INTERSECTION OF FOUR CORNERS OF ROADS, AT A POINT IN THE CENTER OF MIDDLE ROAD NEAR THE CHURCH RUNNING IN A WESTERLY DIRECTION ALONG THE CENTER OF SAID MIDDLE ROAD 280 FEET TO A POINT; THENCE RUNNING IN A NORTHERLY DIRECTION 172 FEET TO A POINT;THENCE RUNNING EASTERLY AND PARALLEL TO THE FIRST COURSE DESCRIBED A DISTANCE OF 280 FEET TO A POINT;THENCE RUNNING SOUTHERLY ALONG THE CENTER OF NORTH COMMUNITY DRIVE A DISTANCE OF 172 FEET TO THE POINT OF BEGINNING.INTENDING TO DESCRIBE A RECTANGULAR PIECE OF LAND LOCATED ON THE CORNER OF THE MIDDLE ROAD AND NORTH COMMUNITY DRIVE..

Tax/Parcel No. 225489-092-010-0001-016-000

ALSO KNOWN AS: 18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK 13601



## EXHIBIT B
## MORTGAGE SCHEDULE

Mortgage made by **SAMANTHA CHEEK** made to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RESIDENTIAL HOME FUNDING CORP.** for **$98,571.00** and interest, dated **JULY 17, 2013** and recorded on **JULY 19, 2013** in INSTRUMENT NO./CRFN **2013-00010612**. Mortgage tax paid: **$739.50**.

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RESIDENTIAL HOME FUNDING CORP.** (assignor), made to **JP MORGAN CHASE BANK, N.A.** (assignee), by assignment of mortgage dated **NOVEMBER 24, 2020** and recorded on **NOVEMBER 24, 2020** in INSTRUMENT NO. **2020-00015399**.

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RESIDENTIAL HOME FUNDING CORP.** (assignor), made to **JP MORGAN CHASE BANK, N.A.** (assignee), by assignment of mortgage dated **NOVEMBER 24, 2020** and recorded on **NOVEMBER 24, 2020** in INSTRUMENT NO. **2020--00015400**.



Date: APRIL 20, 2022
Loan Number: 4000278035
Lender: CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT
OF J.P. MORGAN MORTGAGE ACQUISITION CORP.

Borrower: SAMANTHA CHEEK

Property Address: 18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK  13601

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____          _____
Borrower: SAMANTHA CHEEK                                              Date

Page 8

Date: APRIL 20, 2022
Loan Number: 4000278035
Lender: CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT
OF J.P. MORGAN MORTGAGE ACQUISITION CORP.

Borrower: SAMANTHA CHEEK

Property Address: 18799 COUNTY ROUTE 162, WATERTOWN, NEW YORK  13601

# ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND
AUTHORIZED AGENT OF J.P. MORGAN MORTGAGE ACQUISITION CORP.

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if
requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any
document or agreement entered into in connection with the modification of the Loan, if deemed necessary or
desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the
Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan
Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the
Department of Veterans Affairs, United States Department of Agriculture or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written
request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection
with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is
transferred, conveyed, guaranteed or marketed by the Lender.

_____                        _____
Borrower: SAMANTHA CHEEK                                        Date

## AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
## (MODIFICATION AGREEMENT)

State of ___California___  }
                                          }SS
County of ___Orange___  }

I, ___Terrence Morley___, being duly sworn, deposes and says;

1.  That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein

2.  A certain mortgage bearing the date of JULY 17, 2013, in the principal amount of NINETY-EIGHT THOUSAND FIVE HUNDRED SEVENTY-ONE DOLLARS AND 0 CENTS ($98,571.00) was made by SAMANTHA CHEEK as Mortgagor made to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RESIDENTIAL HOME FUNDING CORP. as original Mortgagee, recorded on JULY 19, 2013, in INSTRUMENT NO./CRFN 2013-00010612, Mortgage tax paid: $739.50 in the JEFFERSON County Clerk's Office, upon which the mortgage tax was duly paid thereon.

    This mortgage was assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RESIDENTIAL HOME FUNDING CORP. (assignor), made to JP MORGAN CHASE BANK, N.A. (assignee), by assignment of mortgage dated NOVEMBER 24, 2020 and recorded on NOVEMBER 24, 2020 in INSTRUMENT NO. 2020-00015399.

    This mortgage was assigned from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RESIDENTIAL HOME FUNDING CORP. (assignor), made to JP MORGAN CHASE BANK, N.A. (assignee), by assignment of mortgage dated NOVEMBER 24, 2020 and recorded on NOVEMBER 24, 2020 in INSTRUMENT NO. 2020--00015400.

3.  The instrument offered for recording herewith is a Modification made by SAMANTHA CHEEK made to CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF J.P. MORGAN MORTGAGE ACQUISITION CORP.

4.  effective/dated APRIL 20, 2022, and to be recorded in the JEFFERSON County Clerk's Office.

5.  The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:

    a)  Unpaid principal balance                      $83,220.85
    b)  New unpaid principal balance              $83,220.85
    c)  Total Cap Amount (b minus a equals)    $0.00
    d)  Additional obligation secured by mortgage as modified

    Additional mortgage recording tax of $0.00 is therefore being paid on this Modification on the sum set forth in 4c.

    That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.



**CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF J.P. MORGAN MORTGAGE ACQUISITION CORP.**

MAY 20 2022

Name:
Title: Terrence Morley, Director, Loss Mitigation
Carrington Mortgage Services, LLC Attorney In Fact

Executed On

By

Sworn to before me this ___20___ day of ___May___, 20 _22_

___Aaron Vargas___, Notary Public
(print name)

State of ___CA___

My commission expires ___10/31/2025___

AARON VARGAS
COMMISSION # 2381019
Notary Public - California
COUNTY OF ORANGE
My Comm. Exp. OCTOBER 31, 2025

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other office completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of  California                                }

County of  Orange                                }

On  05/20/2022  before me,                    AARON VARGAS                    NOTARY PUBLIC,
(Here insert name and title of the officer)

personally appeared          TERRENCE MORLEY                                        ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**AARON VARGAS**
COMMISSION # 2381019
Notary Public - California
COUNTY OF ORANGE
My Comm. Exp. OCTOBER 31, 2025

Notary Public Signature  AARON VARGAS                      (Notary Public Seal)

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

### CAPACITY CLAIMED BY THE SIGNER
☐ Individual(s)
☐ Corporate Officer

_____
(Title)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other

### INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is/are) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

OrderID-454175

2015 Version

# CARRINGTON
MORTGAGE SERVICES, LLC
(NMLS 0 #2600)

P.O. Box 3010 | Anaheim, CA  92803

Loan Number ▮▮▮▮▮▮

Notice Date: 04/21/2022
Carrington Mortgage Services, LLC (CMS)
Final Loan Documents Coversheet

Dear Mortgagor(s):

Carrington Mortgage Services, LLC (CMS) requires that you complete this Name Affidavit if your name has been changed since the origination of your mortgage loan and/or does not match the name as it appears directly below and within the enclosed Documents.

**A Name Affidavit is also referred to as:**
Also Known As Certificate / AKA Statement – To show variations of your name used to execute other documents
Now Known As Certificate / NKA Statement – To show a change in name due to marriage and/or divorce

**SAMANTHA CHEEK**

_Samantha Cheek_
Signature

THIS IS TO CERTIFY THAT MY/OUR LEGAL SIGNATURE(S) IS/ARE AS WRITTEN AND TYPED BELOW.  This signature must _exactly match_ signatures on all Documents.

I, **SAMANTHA CHEEK,** certify that I am also known as:

_Samantha E. Sawyer_
Print Name (Variation)

_Samantha E. Sawyer_
Sample Signature (Variation)

Print Name (Variation)

Sample Signature (Variation)

STATE OF: _New York_

COUNTY OF: _Jefferson_

Subscribed and sworn to before me this _16_ day of _May_ 20_22_ by _SAMANTHA SAWYER_

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_Elizabeth Berghorn_
Notary Public

Commission No: _____

Commission _____
**ELIZABETH BERGHORN**
**Notary Public, State of New York**
**No. 01BE4703328**
**Qualified in Jefferson County**
**Commission Expires Jan 31, 20___**

DC770_06/02/2021

Page 2 of 2

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re  Samantha E. Sawyer

                          **Debtor**        Case No. 20-31009-5-wak
                                            Chapter 13

Employer's Tax Identification No(s). [if any]
Last four digits of Social Security No(s): ▮▮▮▮

## CERTIFICATION OF PAYMENT HISTORY ON THE NOTE AND MORTGAGE
### DATED ___7/17/2013___ AND RELATED INFORMATION

_Ron Chupa_ , of full age, employed as _Servicing Agent_ by _Carrington Mortgage Services LLC_, hereby certifies the following information:

Mortgage Recorded on: _7/19/2013_ , in __Jefferson__ County, in Book ____ at Page File#: 2013-00010612

Property Address: 18799 COUNTY ROUTE 162, WATERTOWN, NY 13601

Mortgage Holder: J.P. MORGAN MORTGAGE ACQUISITION CORP.,

Movant's relationship to Mortgage Holder: Attorney

Mortgagor(s)/Debtor(s): Samantha E. Sawyer

Bankruptcy Petition filed on: 9/24/2020

First Post-Petition Mortgage Payment Due: 6/1/2022

**POST-PETITION PAYMENT HISTORY:**

|  | Amount Due | Date Payment Was Due | How Payment was Applied (Mo./Yr.) | Amount Received | Date Payment Received | Check or Money Order Number |
|---|---|---|---|---|---|---|
| 1. | $1,016.19 | 6/1/2022 | | | | |
| 2. | $1,016.19 | 7/1/2022 | | | | |
| 3. | $1,016.19 | 8/1/2022 | | | | |
| 4. | $1,016.19 | 9/1/2022 | | | | |
| 5. | $1,016.19 | 10/1/2022 | | | | |
| 6. | $1,016.19 | 11/1/2022 | | | | |
| 7. | $1,098.83 | 12/1/2022 | | | | |
| 8. | $1,098.83 | 1/1/2023 | | | | |

O:LR4001(12/12/2011)

| | | | | | | |
|---|---|---|---|---|---|---|
| 9. | | | | | | |
| 10. | | | | | | |
| 11. | | | | | | |
| 12. | | | | | | |
| 13. | | | | | | |
| 14. | | | | | | |
| 15. | | | | | | |
| 16. | | | | | | |
| 17. | | | | | | |
| 18. | | | | | | |
| 19. | | | | | | |
| 20. | | | | | | |
| 21. | | | | | | |
| 22. | | | | | | |
| 23. | | | | | | |
| 24. | | | | | | |
| TOTAL | $8,294.80 | | | | | |

## MONTHLY POST-PETITION PAYMENTS PAST DUE:

[Number of Payments Past Due]       3       multiplied by [Monthly Payment Amount, Exclusive of

Late Charges and Other Charges]   $1,098.83   = $3,296.49   Due as of   04/01/23  .
                                                          -$97.19= $3,199.30

Itemize Past-Due Late Charges and Other Additional Charges Below.  Attach a separate sheet, if
necessary.

| Type of Charge | Date Incurred | Relative to Payment Due On | Amount |
|---|---|---|---|
| Post Suspense Balance | | | $97.19 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total Additional Charges Amount Due | | | |

## EACH CURRENT MONTHLY PAYMENT IS COMPRISED OF:

Principal................     $401.29
Interest..................     _____
R.E. Taxes...............     _____
Insurance................     697.54
Late Charge..............     _____

2

Other.....................          _____        (Specify)
TOTAL...................          _____
                                          $1,098.83

If the monthly payment has changed during the pendency of the case, please explain (attach a separate sheet, if necessary):

**MONTHLY PRE-PETITION PAYMENTS PAST DUE:**

[Number of Payments Past Due] [From Date] [To Date] multiplied by [Monthly Payment Amount Inclusive of Late Charges and Other Charges]

_____ = _____ Due as of _____.

### REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to your motion and indicate the exhibit number associated with the documents.

(1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with the complete and legible copy of the mortgage and any assignments of the note and mortgage in the chain of title from the original mortgagee to the current moving party. (Exhibit __A__.)

(2) Copies of documents establishing that Movant's interest in the real property or cooperative apartment was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office of the Register of the county the property or cooperative apartment is located in. (Exhibit __A__.)

### CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1 AND 2 IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS KEPT IN THE COURSE OF REGULARLY CONDUCTED ACTIVITY, MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, AND WERE MADE BY REGULARLY CONDUCTED ACTIVITY AS REGULAR PRACTICE.

I FURTHER CERTIFY THAT THE COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THE MOTION AS REQUIRED BY PARAGRAPHS 1 AND 2 IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL

DOCUMENTS THAT ARE IN THE POSSESSION OF THE MOVANT, EXCEPT AS FOLLOWS: _____.

I, _Rosa Chapa   Servicing Agent_ <NAME AND TITLE> OF _Carrington Mortgage Servicer_ <NAME OF MOVANT>, DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AT _Plano_ <CITY/TOWN>, _TX_ <STATE> ON THIS _27_

DAY OF _April_, 20_23_.

_Rosa Chapa   BK Supervisor_
[Print Name, Title, Name of Movant, Movant's
Street Address, City, State, and Zip Code Below}

_Carrington Mortgage Servicer_
_1600 Tennyson Pkwy_
_Plano, TX  75043_

4